```
          UNITED STATES DISTRICT COURT
        SOUTHERN DISTRICT OF WEST VIRGINIA
                  AT CHARLESTON
```

**RANDY MELTON,**

       Plaintiff,

v.                                      Civil Action No. 2:12-cv-1697

**PRECISION LASER & INSTRUMENT, INC.,**

       Defendant.

## MEMORANDUM OPINION AND ORDER

Pending is the motion by plaintiff Randy Melton ("Melton") to remand, filed June 15, 2012. For the reasons below, the court finds that defendant Precision Laser & Instruments ("Precision") has established the jurisdictional amount by a preponderance of the evidence, and the court denies the motion.

### I. Background

Melton commenced this action in the Circuit Court of Kanawha County, West Virginia on April 24, 2012. He is a resident of Kanawha County, West Virginia. Compl. ¶ 1. Precision is a Pennsylvania corporation with a principal place of business in Ambridge, Pennsylvania. Id. ¶ 2.

The facts, as set forth in the complaint, are as follows. Precision hired Melton as "Survey/Mapping Sales and Support Manager" of its Charleston, West Virginia office in June 2009. Id. ¶ 5. On June 16, 2009, the parties signed an Employment Agreement which provided that Melton would receive a yearly salary of $55,000. Id. ¶¶ 6-7. Additionally, the Employment Agreement provided for "a 5% commission on all sales from existing 'Special Project Contract' sales that were derived from existing contracts with GPS Innovations, Inc." Id. ¶ 6.

The complaint describes GPS Innovations ("GPSI") as "Melton's former company." Id. On June 29, 2009, Melton, acting on behalf of GPSI as its president, signed an Asset Purchase Agreement with Precision. Id. ¶ 14; Asset Purchase Agreement 7. The agreement transferred to Precision "all of Seller's right, title, and interest in and to all the assets, property rights (tangible and intangible), used in the operation of GPS Innovations." Asset Purchase Agreement 1. Melton claims that he transferred the Special Project Contract sales to Precision ownership -- presumably through the Asset Purchase Agreement -- as a result of his promised 5% commission. Compl. ¶ 23.

On June 30, 2009, Melton and Precision entered into a Confidentiality and Non-Competition Agreement ("CNC Agreement").

The CNC Agreement stated that Melton's employment could be terminated "at any time, with or without cause," and it "d[id] not create any obligations on the part of [Precision] to employ Melton for a fixed period of time." Id. ¶¶ 8-9, 33.  The agreement, nonetheless, indicated Precision's "intention" to retain Melton for at least five years. Id. ¶ 9.  Also on June 30, 2012, Melton and Precision entered into an Addendum to the Employment Agreement ("Addendum"). Id. ¶ 10.  The Addendum reiterated Precision's intent to retain Melton for five years and provided for a severance payment of one year's salary if Precision terminated Melton's employment within the first nine months. Id. ¶¶ 11-12.  Precision terminated Melton's employment on May 14, 2010, nearly eleven months after his hiring. Id. ¶ 16.

The complaint contends that Precision's intentions, as represented in the CNC Agreement and the Addendum, altered Melton's at-will status to that of an employee with an employment term of no less than five years. Id. ¶ 38.  Melton entered into the agreements "under the assumption" that his employment would last for that term. Id. ¶ 13.  The complaint further states that Precision "did not intend" to employ Melton for five years, but rather made such representations to "induce Melton to enter into the [Asset Purchase] Agreement." Id. ¶ 15.  Melton asserts that he relied on Precision's false

3

representations and that his reliance "was justified" due to "the large amount of GPSI's assets" sold under the Asset Purchase Agreement. Id. ¶ 45. The Asset Purchase Agreement is itself a source of contention, as Melton alleges that Precision has refused to pay him for certain assets or to remove the items from his storage facility. Id. ¶ 18.

Melton also claims that Precision has refused to pay him a 5% commission on any sales from the Special Project Contract. Id. ¶ 19. No commission payments have been made since May 14, 2010. Id. ¶ 29. The complaint asserts that payments should have been made for "all sales to any customer or client referenced as a former GPSI customer or client, not just for those sales made by Melton." Id. ¶ 26. It states that Precision "ignored many of the types of sales" which would have resulted in commissions and consequently "failed to pay Melton everything due to him under the Employment Agreement." Id. ¶¶ 24-25. Melton claims that Precision owes commissions for the sale of the West Virginia based "Machine Control Business," as well as for the "lost business" the Machine Control Business would have generated had Precision not sold it. Id. ¶¶ 27-28.

Melton's five-count complaint sets forth the following claims: Count One, "Breach of Employment Contract"; Count Two, "Breach of Confidentiality and Non-Competition Agreement and

Breach of Addendum to Employment Agreement"; Count Three, "Fraudulent Inducement"; Count Four, "Violation of the Wage Payment and Collection Act"; and Count Five, "Negligence."

On May 25, 2012, Precision removed, invoking the court's diversity jurisdiction, pursuant to 28 U.S.C. § 1332(a)(1). On June 15, 2012, Melton moved to remand on the ground that Precision has not met its burden of proof in establishing the amount in controversy as being in excess of $75,000.

## II. The Governing Standard

"Except as federal law may otherwise provide, when a defendant removes a state civil action to federal district court, federal removal jurisdiction exists if the action is one 'of which the district courts of the United States have original jurisdiction.'" In re Blackwater Sec. Consulting, LLC, 460 F.3d 576, 583 (4th Cir. 2006) (quoting 28 U.S.C. § 1441(a)). Because removal jurisdiction implicates significant federalism concerns, it is strictly construed, and if federal jurisdiction is doubtful, the case must be remanded. See Palisades Collections LLC v. AT&T Mobility LLC, 552 F.3d 327, 336 (4th Cir. 2008); Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994). The party seeking removal bears the burden of

5

establishing federal jurisdiction. See Mulcahey, 29 F.3d at 151.

Pursuant to 28 U.S.C. § 1332(a)(1) diversity jurisdiction, district courts possess original jurisdiction over all actions between citizens of different states "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." If a diversity jurisdiction case is initially filed in federal court, the court will consider the amount in controversy requirement satisfied unless it "appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount." St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938). When a defendant removes a case with unspecified damages from state court, however, the defendant "must prove by a preponderance of the evidence that the value of the matter in controversy exceeds the jurisdictional amount." Landmark Corp. v. Apogee Coal Co., 945 F. Supp. 932, 935 (S.D. W. Va. 1996); see also Bartnikowski v. NVR, Inc., 307 F. App'x. 730, 734 n.7 (4th Cir. 2009) (applying a preponderance standard that "sister circuits have explicitly adopted," but reserving the right to consider "whether a more stringent standard would be appropriate").

The court considers the entire record and makes an independent evaluation of whether the amount in controversy has

6

been satisfied.  <u>Weddington v. Ford Motor Credit Co.</u>, 59 F. Supp. 2d 578, 584 (S.D. W. Va. 1999).  The court must conduct that evaluation "on the basis of the record existing at the time the petition for removal is filed."  <u>Landmark Corp.</u>, 945 F. Supp at 936.  Important factors include the type and extent of the plaintiff's injuries and the possible damages recoverable from those injuries.  <u>McCoy v. Norfolk S. Ry. Co.</u>, 858 F. Supp. 2d 639, 649 (S.D. W.Va. 2012).  A court can also consider as a factor a plaintiff's settlement demands prior to removal.  <u>Id.</u> at 649-50; <u>see also</u> <u>Scaralto v. Ferrell</u>, 826 F. Supp. 2d 960, 964 (S.D. W.Va. 2011) (collecting West Virginia federal court decisions that treat settlement offers as "just one piece of evidence").  But <u>see</u> <u>id.</u> at 968-69 (adopting the rule that "a demand in excess of the jurisdictional minimum should be treated as the amount in controversy, unless the plaintiff shows that to a legal certainty he cannot recover over $75,000").

### III. Discussion

The parties' diversity of citizenship is not disputed. Precision need only establish that the $75,000 jurisdictional amount is satisfied.  Precision's notice of removal highlights the breadth of Melton's claims and states that Melton "is assuredly seeking more than $75,000; indeed, well over $200,000 based on lost wages alone."  Not. Removal 3.

In his motion to remand, Melton contends that Precision has not satisfied its burden of proof respecting the $75,000 jurisdictional minimum. He notes that Precision has failed to present evidence that commissions exceed $75,000 and has not accounted for mitigation in calculating lost wages. Pl.'s Mot. Remand 3. He argues that Precision has not met its burden for removal because damages are incapable of being calculated without discovery and must be determined by a jury. Id.

In response, Precision apprised the court of settlement negotiations between the parties and attached the relevant emails as exhibits. Prior to suit, in a June 28, 2011 email, Melton's counsel offered to settle for $550,000, a figure he described as "a realistic number and not filled with fluff to leave room for negotiations." Def.'s Opp'n. Mot. Remand, Ex. 1.

In an October 2, 2011 email, Melton's counsel rejects a $25,000 counteroffer from Precision as a "nuisance value settlement." Def.'s Opp'n. Mot. Remand Ex. 2, at 1, 3. In support of his $550,000 demand, he gives specific examples of Melton's damage claims. He mentions a $2600 commission for $52,000 of pending extended warranty sales and adds that the amount "is quite small in comparison to the sales attributed to servicing the warranties." Id. at 2. He notes a 5% commission

of $30,000 on $600,000 of equipment purchases by the "special contracts client[]" Kanawha Stone Company, Inc., and he claims to be "sure there will be numerous other instances of sales to the special contract companies." Id. at 2-3.

Additionally, Melton's counsel states that fee-shifting pursuant to Melton's Wage Payment Collection Act claim is "certainly a significant consideration." Id.; see also Amick v. C & T Dev. Co., 187 W.Va. 115, 118 416 S.E.2d 73, 76 (1992) ("An employee who succeeds in enforcing a claim under [the Wage Payment Collection Act] should ordinarily recover costs, including reasonable attorney fees unless special circumstances render such an award unjust." (quoting Syl. Pt. 1, Farley v. Zapata Coal Corp., 167 W.Va. 630, 630, 281 S.E.2d 238, 239 (1981.))). He explains that he has "seen Kanawha County judges award fee petitions over $30,000.00 on a recovery of $6,500," and that "the fee award alone could be in the neighborhood of Mr. Melton's demand" if the case went to trial. Def.'s Opp'n. Mot. Remand Ex. 2, at 3.

Melton's counsel's most recent included email, dated December 5, 2011, states that "Mr. Melton is not rigid in his demand" and "would be willing to settle all claims for $300,000." Id. at 1. He also writes that the new $300,000 offer is "not a firm demand." Id. In his briefing for the

9

pending motion, Melton mentions that Precision later increased its offer to $30,000.  Pl.'s Reply Supp. Mot. Remand 2.  Precision contends that these settlement communications show that the amount in controversy "far exceeds" the requirement for diversity jurisdiction.  Def.'s Opp'n. Mot. Remand 3-4.

    Reviewing the record before it respecting the two key factors in this case -- the nature of Melton's claims and the settlement offers -- the court concludes that Precision has established by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional threshold.  Regarding the nature of the claims, Melton's Count Two assertion that Precision breached his five-year employment agreement with over four years remaining could alone eclipse the jurisdictional requirement.  Precision points out that at Melton's stated salary of $55,000, the total in controversy under Count Two is $220,000.  Even if the court limited such damages to the period between Melton's termination (May 14, 2010) and the removal (May 25, 2012), the figure remains over $110,000 and well in excess of the jurisdictional amount.

    The record does not support Melton's argument that the amount in controversy must be discounted to account for Precision's mitigation defense.  The court must make its determination based on the record at the time of removal, and

that record contains no evidence of mitigation.  Discussion of mitigation is limited to the listing of mitigation as an affirmative defense in Precision's answer and Melton's unsupported contention that Precision "is fully aware that Plaintiff mitigated his damages and obtained employment shortly after his termination."  Pl.'s Mot. Remand 3.  Such bare allegations provide no evidentiary basis for determining mitigation.  In contrast, Melton's salary, the terms of the employment agreement, and the date of his termination are all supported in the record by Melton's own allegations and the parties' contracts.

Melton's claims for past commissions and attorney fees further augment the amount in controversy.  In his October 3, 2011 settlement correspondence, Melton's counsel expressly references two sets of commissions amounting to $32,600.  The full amount in controversy attributable to commissions is likely significantly higher since Melton's counsel then notes that he is "sure there will be numerous other instances of sales to the special contract companies."  Regarding attorney fees, this court has in the past used $25,000 as a reasonable preliminary estimate.  See Maxwell v. Wells Fargo Bank, N.A., 2009 WL 3293871, at *4 n.7 (S.D. W. Va. October 09, 2009).  That same value seems appropriate, if not overly conservative, in this case, given Melton's counsel's reference to $300,000 fee awards

and his view that attorney fees "alone could be in the neighborhood of Mr. Melton's demand."  With over $100,000 in damages arising from breach of the employment term, at least $32,600 in unpaid commissions, and an estimated $25,000 in attorney fees, it is evident to the court that the combined amount in controversy for Melton's claims exceeds the $75,000 jurisdictional amount.

The parties' settlement negotiations also weigh strongly for conferring jurisdiction.  Melton's rejection of Precision's $30,000 settlement offer creates a clear floor value for the amount in controversy.  See Coleman v. Wicker, No. 2:11-00558, 2012 WL 1111465, at *3 (S.D. W. Va. March 30, 2012). Melton's own demands suggest the possible upper range for his claims.  The $300,000 settlement demand, though a significant concession from the original $550,000 demand, is still four times the required jurisdictional amount.  The assertion that the $550,000 offer was not "filled with fluff" lends some weight to the conclusion that the $300,000 figure is much closer to Melton's good-faith valuation of his claims.  That the $300,000 offer is "not a firm demand" does not justify the inference that the true amount in controversy is less than $75,000.

Considering the record before it, and in particular the nature of Melton's claims and the parties' settlement

discussions,[1] the court finds that Precision has established by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional amount.

IV.

Based upon the foregoing discussion, it is, accordingly, ORDERED that Melton's motion to remand be, and it hereby is, denied.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record.

ENTER: December 26, 2012

John T. Copenhaver, Jr.
United States District Judge

---

[1] Since these factors indicate that the jurisdictional amount is met, the court need not further consider the bright-line approach to settlement demands set forth in Scaralto. See 826 F. Supp. 2d at 963.